UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | 3:99CR154(DJS) |
| : | |
| PAUL WILLIAMS : | |

## MEMORANDUM OF DECISION AND ORDER

Defendant Paul Williams ("Williams") moves this court to "correct" his federal sentences pursuant to 28 U.S.C. § 2255. (See dkt. # 31.) For the reasons set forth herein, Williams's motion **(dkt. # 31)** is **DENIED**.

## I. BACKGROUND

On March 17, 2000, Williams pled guilty to count one of the Indictment in docket number 3:99cr265(DJS) and count one of the Indictment in docket number 3:99cr154(DJS). Then, on December 5, 2000, this court sentenced Williams on two counts of conviction. He received concurrent sentences of 100 months imprisonment for distribution of five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 71 months imprisonment for unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a). At the time this court pronounced sentence, Williams was in the custody of the State of Connecticut because he had begun serving a 10 year sentence that was imposed by the State of Connecticut Superior Court at Manchester. When this court sentenced Williams, it also ordered that his federal sentences run concurrently to the Connecticut sentence that Williams had already begun to serve. Williams did not appeal his federal sentences.

On October 13, 2002, Williams received nunc pro tunc designation from the Northeast

Regional Inmate Systems. This determination allowed Williams's federal sentences to start on the date of imposition, December 5, 2000, even though he was in state custody at that time. (Dkt. # 31.) Williams was also awarded a one day of prior custody credit for June 15, 1999, the day he was arrested because this date was not credited towards any other sentence. (Id.)

On September 26, 2005, Williams filed a "Motion for Clarification of Sentence," (see dkt. # 29), pursuant to 28 U.S.C. § 2241. In that motion, Williams asked the court to order the Federal Bureau of Prisons ("BOP") to recalculate his release date. He did not challenge the legality of his sentence. On October 4, 2005, this court denied Williams's Section 2241 motion because of his failure to show that he had exhausted his administrative remedies. Williams then filed a "Motion to Correct Judgment," this time relying on Section 5G1.3 of the U.S. Sentencing Guidelines ("U.S.S.G.") and 28 U.S.C. § 2241. (See dkt. # 31.) In this motion, Williams challenged the legality of his sentence. On January 31, 2006, this court issued a written opinion, concluding that upon Williams's election, his motion could be converted into a Section 2255 motion. On February 21, 2006, Williams authorized the conversion (see dkt. # 34), and on March 23, 2006, this court issued an order to show cause, (see dkt. # 35), which ordered the Government to state its position on Williams's motion.

## II. ANALYSIS

Williams argues that his sentencing counsel was ineffective for failing to appeal his sentence (see dkt. # 34) and that his sentence was imposed in violation of the laws of the United States because the court misapplied U.S.S.G. § 5G1.3(b) ("Section 5G1.3(b)"). He also contends that his sentencing counsel was "ineffective in failing to bring to this court's attention the requirements of U.S.S.G. § 5G1.3(b)." (Dkt. # 34.)

2

First, with respect to Williams's claim that his counsel was ineffective for failing to appeal his sentence, his claim is time-barred by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). The AEDPA significantly amended 28 U.S.C. § § 2244, 2253, and 2255. It reads:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. The Second Circuit has held, that, "for purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." Moshier v. U.S., 402 F.3d 116, 118 (2d Cir. 2005). Here, Williams does not dispute that his claim would be barred under 28 U.S.C. § 2255(1) because he waited more than five years after his judgment of conviction became final to argue that his attorney failed to file an appeal. Indeed, he did not assert this claim until he filed, on February 21, 2006, his "Motion to Authorize the District Court to Convert his Pending Motion into a Section 2255." (See dkt. # 34.) Instead, Williams argues that under 28 U.S.C. § 2255(4), his claim is timely. Alternatively, Williams urges this court to invoke the doctrine of equitable tolling. For the reasons explained below this

court concludes that Williams's ineffective assistance of counsel claim is time-barred under § 2255(4) and that the circumstances of Williams's case do not warrant equitable tolling.

According to Williams, this case falls within § 2255(4)[1] because his "counsel failed to file an appeal even though he was instructed to do so." (Dkt. # 37.) "Section 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final . . . , to the later date on which the particular claim accrued." Wims v. U.S., 225 F.3d 186, 190 (2d Cir. 2000) (internal citation omitted). Indeed, the Second Circuit has held that when conducting an analysis pursuant to § 2255(4), a court must

> determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.

Id. Yet, "[t]he statute does not require the maximum feasible diligence, only due, or reasonable diligence." Id. at 190, n. 4; accord, e.g., Aron v. U.S., 291 F.3d 708, 712 (11th Cir. 2002) ("Due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts."). Thus, the "due diligence" standard constitutes "an objective test, equating 'due' with 'reasonable diligence.'" Rodriguez v.

---

[1] It does not appear that any of the other exceptions set forth in § 2255 apply to the instant claim. Williams does not identify any "impediment" to making his claim that was created by the government. 28 U.S.C. § 2255(2). Moreover, he does not identify or claim the violation of any right "initially recognized" or "newly recognized" by the Supreme Court and "made retroactively applicable to cases on collateral review" following the entry of final judgment. Id. § 2255(3).

New York, No. 01Civ.9374KMWAJP, 2003 WL 289598, at * 17 (S.D.N.Y. Feb. 11, 2003) (quoting Wims, 225 F.3d at 190 n. 4).

This test requires courts to consider certain external requirements such as, for example, "the conditions of [the petitioner's] confinement." Wims, 225 F.3d at 190-9. But "courts should not consider such subjective factors as the petitioner's intelligence, education, language skills, or mental stability." Rodriguez, 2003 WL 289598, at *17. See e.g. Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("[t]ime begins when the prisoner knows (or through diligence could discover) the important facts not when the prisoner recognizes their legal significance."). Because "a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice," Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000), a petitioner is not required "to check up on his counsel's pursuit of an appeal on. . . the very day on which [his] conviction becomes final . . . ," Wims, 225 F.3d at 190. However, "a duly diligent person" does not require "three and a half years . . . to discover that counsel had not filed a notice of appeal . . . ." Zapata v. U.S., Nos. 90 Cr. 943, 99 Civ. 00085, 2000 WL 1610801 at *3 (S.D.N.Y. Oct. 27, 2000); see Tineo v. U.S., No. 01 CIV. 4511(HB), 97 CR. 313(HB), 2002 WL 1997901 at *2 (S.D.N.Y. Aug. 29, 2002) ("A duly diligent person in Tineo's shoes would not have needed more than three years to discover the alleged ineffectiveness of counsel, including whether his attorney had failed to file a direct appeal."); Gonzalez v. U.S., 02 Civ. 2733, 2002 WL 31512728 at *4 (S.D.N.Y. Nov. 8, 2002) ("a 46-month delay" does not comport with a "reasonable concept of due diligence" even accounting for "a petitioner's pro se status and the realities of prison life."); Plowden v. Romine, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (denying equitable tolling of § 2244(d)(1), because petitioner's 17-month delay in checking on status of state appeal proved lack

5

of diligence); Montenegro v. U.S., 248 F. 3d 585, 590-93 (7th Cir. 2001) (declining to decide whether § 2255 petitioner actually requested attorney to file direct appeal, but affirming decision that petition was time barred because, among other things, the fact "[t]hat an appeal had not been filed was a matter of public record, which reasonable diligence could have unearthed."), overruled on other grounds, Ashley v. U.S., 266 F.3d 671 (7th Cir. 2001); Rodriguez, 2003 WL 289598 at * 19 ("it was simply not 'reasonably diligent' for [Petitioner] to wait over 18 months before inquiring into the status of his appeal."). Here, although Williams did not establish when he first inquired into the status of his appeal, he did not argue that his "counsel failed to file an appeal even though he was instructed to do so" until February 21, 2006, when he filed his "Motion to Authorize the District Court to Convert his Pending Motion into a Section 2255." (See dkt. # 34.) Thus, Williams waited more than five years after his judgment of conviction became final to argue that his counsel failed to file an appeal. The court finds that it simply was not reasonably diligent to wait more than sixty months to raise this argument. Accordingly, § 2255(4) does not apply to Williams's claim.

Williams next argues that the court should exercise its equitable powers to excuse his delay. The Second Circuit has observed that to qualify for equitable tolling, a "petitioner must establish that 'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) ( per curiam )). Equitable tolling may be "awarded in the court's discretion only upon consideration of all the facts and circumstances." Baldayaque v. U.S., 338 F.3d 145 (2d Cir. 2003) (quoting Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 965 (2d Cir. 1981)). Upon review

6

of the facts and circumstances present in this case, this court finds that Williams has not established that "extraordinary circumstances" prevented him from discovering that his counsel did not file a notice of appeal. As such, the court finds that his claim is untimely.

Second, Williams argues that, pursuant to U.S.S.G. § 5G1.3(b), this court should adjust his sentence by "crediting" his sentence 17 months and 20 days. According to Williams, this period of time accounts for the time that he was incarcerated at a State of Connecticut facility after his arrest on June 15, 1999, but prior to his federal sentencing on December 5, 2000. This claim is also time-barred by the AEDPA. Here, again, Williams does not dispute that the instant claim, which is premised upon Section 5G1.3(b), would be barred under 28 U.S.C. § 2255(1) because it was first asserted nearly five years after the judgment of conviction became final. Instead, Williams argues that under 28 U.S.C. § 2255(4), his motion is timely. Alternatively, Williams urges this court to invoke the doctrine of equitable tolling. For the reasons explained below, this court concludes that the instant claim is time-barred under § 2255(4) and that the circumstances of Williams's case do not warrant equitable tolling.

According to Williams, this case falls within § 2255(4)[2] because "Petitioner under due diligence discovered as of July 12, 2005, that his trial counsel had misinformed him that he would receive a credit of 17 months and 20 days [pursuant to Section 5G1.3(b)], and that as such

---

[2]It does not appear that any of the other exceptions set forth in § 2255 apply to the instant motion. Williams does not identify any "impediment" to making his motion that was created by the government. 28 U.S.C. § 2255(2). Moreover, he does not identify or claim the violation of any right "initially recognized" or "newly recognized" by the Supreme Court and "made retroactively applicable to cases on collateral review" following the entry of final judgment. Id. § 2255(3).

7

no appeal needed to be filed."[3] (Dkt. # 37.) Here, the Guidelines provision Williams seeks to have the court apply, Section 5G1.3(b), was referenced in the presentence report, and no new legal interpretation of this provision followed his sentence. Thus, Williams could have raised the same claim that he does now either on direct appeal or by bringing a 2255 petition within one year of the date of the imposition of his sentence because the facts supporting his Section 5G1.3(b) claim were referenced in the presentence report. Owens v. Boyd, 235 F.3d at 359 ("[t]ime begins when the prisoner knows (or through diligence could discover) the important facts not when the prisoner recognizes their legal significance."). Moreover, although Williams contends that he did not learn that he would not receive the "credit" of 17 months and 20 days until July 12, 2005, the materials Williams submitted attached to his "Motion to Correct Judgment," (dkt. # 31), establish that on or about February 7, 2005, Williams asked the BOP whether he would receive a credit for his state sentence. The court finds that it simply was not reasonably diligent to wait until February 2005, more than forty-eight months after his judgment of conviction became final, to begin to make a 5G1.3(b) inquiry. Accordingly, § 2255(4) does not apply to the case at hand.

Williams next argues that the court should exercise its equitable powers to excuse his delay in filing his federal habeas petition. Upon review of the facts and circumstances present in this case, this court finds no "extraordinary circumstances" that prevented Williams from timely filing his "Motion to Correct Sentence." In addition, even if the motion were not denied because of its lack of timeliness, it would be denied on the merits, as follows:

---

[3]The court observes that this claim appears to be inconsistent from Williams claim that his "counsel failed to file an appeal even though he was told to do so." (Dkt. # 37.)

Williams alleges that pursuant to U.S.S.G. § 5G1.3(b), he is entitled to a "credit" for the period of imprisonment he served for the Connecticut offense prior to his federal conviction. Section 5G1.3(b) of the U.S. Sentencing Guidelines Manual reads,

> [i]f subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
> (1) The court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) The sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b). According to Williams, this court should adjust his federal sentence by "crediting" his sentence 17 months and 20 days because this court used his state conviction as relevant conduct to determine his offense level when it sentenced him for violating 21 U.S.C. § 841(a)(1) and 8 U.S.C. § 1326(a). Williams's argument fails, however, because he was not sentenced within the applicable Guidelines range. Instead, the court departed downward from the Guidelines.

Williams's federal sentence was driven by his drug distribution charge, which subjected him to a mandatory minimum sentence of 5 years imprisonment and a maximum sentence of 40 years imprisonment. See 21 U.S.C. § 841(a)(1). This charge related to a single sale of 28 grams of crack cocaine by Williams to an FBI cooperator. His sentencing Guidelines range, however, was calculated based on his overall sale of drugs, in the amount of 216 grams. This total

included a quantity for which Williams had been convicted in state court. As a result of Williams's offense conduct, his base offense level was 34. This level was increased by two levels because of Williams's role in the offense. Then, after a three-level reduction for acceptance of responsibility, Williams's adjusted offense level was 33. Williams was a career criminal for Guidelines purposes, and thus his criminal history score was VI. This resulted in a sentencing range of 235-293 months imprisonment. The presentence report recommended that Williams's sentence run concurrent with his then-pending state sentence because that sentence was based on conduct that was included in his relevant conduct.

      Pursuant to Section 5G1.3(b), if the proper federal sentence was 235 months (as it had been here), and if the defendant had already served 17 months and 20 days on related state charges, then the court would reduce the 235 month sentence by 17 months and 20 days. This adjustment, however, would not be considered a downward departure. Rather, it would be an adjustment within the structure of the Guidelines. U.S. v. Yahne, 64 F. 3d 1091, 1095 (7th Cir. 1995) ("adjustments under 5G1.3 . . . ought not be considered downward departures but adjustments within the structure of the Guidelines."); U.S. v. Mercedes, No. 99 CR. 1142 SAS, 2007 WL 766306, at * 3 (S.D.N.Y. March 14, 2007) ("the adjustment under section 5G1.3(b) is not a departure from the Guidelines range. . . .") Here, however, instead of adjusting Williams's sentence under 5G1.3(b) by reducing the sentence of 235 months by 17 months and 20 days, the court departed downward based on the Government's 5K1.1 motion.[4] Indeed, as a result of the Government's 5K1.1 motion, the court sentenced Williams below the applicable Guidelines

---

[4] Section 5K1.1 of the U.S. Sentencing Guidelines allows a downward departure for substantial assistance to the authorities.

range and imposed a 100 month sentence on the drug count. Accordingly, the Section 5G1.3(b) adjustment requested by Williams does not apply here because the court granted a downward departure and did not attempt to implement a strict Guidelines sentence.

Moreover, the court observes that it imposed a sentence that was less than the pending state sentence, considering the amount of time already served on that sentence. At the time of Williams's federal sentencing, on December 5, 2000, he had been incarcerated by the State of Connecticut for approximately 18 months because he had been incarcerated since the time of his arrest on June 15, 1999. At sentencing, this court considered the amount of time Williams had already served on his 10 year state sentence[5] and imposed a sentence that was less than the pending state sentence, so that the federal sentence did not prolong Williams's period of incarceration. Accordingly, this court did exactly what Section 5G1.3(b) would have commanded if applicable - the court imposed a sentence of less than 10 years to ensure that the federal sentence did not prolong Williams's period of incarceration.

After Williams filed his "Motion to Correct Judgment," (see dkt. # 31), he raised, for the first time, the argument that his sentencing counsel was ineffective for "failing to bring to the court's attention the requirements of U.S.S.G. § 5G1.3(b)." (See dkt. # 34.) As a preliminary matter, the court finds that this ineffective assistance of counsel claim is time barred by the AEDPA for the same reasons that Williams's 5G1.3(b) claim is untimely. Moreover, this claim fails on the merits. An ineffective assistance of counsel claim is reviewed under the standard set forth in <u>Strickland v. Washington,</u> 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness"

---

[5]Williams's state sentence was imposed on February 23, 2000.

established by prevailing professional norms and, second, that this incompetence caused prejudice to him. Id. at 687-88. Counsel is presumed to be competent. Thus, "the burden rests on the accused to demonstrate a constitutional violation." U. S. v. Cronic, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the Strickland test, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial. Id. When the ineffective assistance of counsel claim is premised on counsel's strategies or decisions, the petitioner must demonstrate that he was prejudiced by his counsel's conduct. To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. See id. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. Here, Williams has not satisfied the first prong. As discussed above, instead of imposing a strict Guidelines sentence and applying Section 5G1.3(b), which would have been an adjustment within the Guidelines range, the court departed downward under Section 5K1.1 and imposed a sentence below the Guidelines range. Accordingly, Williams's counsel, by persuading the Government to move for a downward departure pursuant to Section 5K1.1 provided objective reasonable assistance because he obtained a sentence that was more favorable to Williams. Thus, to the extent Williams claims ineffective assistance of counsel, his claim fails.

### III. CONCLUSION

For the reasons stated above, Williams has failed to demonstrate that he is entitled to relief under 28 U.S.C. § 2255, and his "Motion to Correct Judgment," **(dkt. # 31)** is **DENIED.** The court further declines to issue a certificate of appealability. A certificate of appealability

may only issue if the applicant has made a substantial showing of he denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); cf.  Miller-El v. Cockrell, 537 U.S. 322, 336, (2003); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir.2000).  Petitioner may make such a showing by demonstrating "(1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further."  Wright v. U.S., No. 01 Civ.443, No. 97 Cr. 228, 2002 WL 32086478, at *1 (D.Conn. Nov. 1, 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Williams has not made a substantial showing of a denial of a constitutional right; therefore, appellate review is not warranted.

      The Clerk of the Court is directed to close this file.

      **SO ORDERED** at Hartford, Connecticut, this ___8th____ day of June, 2007.

/S/DJS

---

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**